IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIA LYNN PETERSON, | ) | CASE NO. 1:15-CV-2670 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| UH REGIONAL HOSPITALS, et al., | ) | <u>MEMORANDUM AND ORDER</u> |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court upon Motion for Summary Judgment filed by
Defendants, UH Regional Hospitals, ("UHRH"), University Hospitals Bedford Medical Center,
James Johnson ("Mr. Johnson") and Maria Kamenos ("Ms. Kamenos")(hereafter referred to
collectively as "Defendants"). (ECF #31). Plaintiff, Tia Lynn Peterson, ("Ms. Peterson"), filed a
Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF #32), and
Defendants filed a Reply Memorandum in Support (ECF #37). The issues are fully briefed and
ripe for review.

For the reasons more fully set forth herein, Defendants' Motion for Summary Judgment is
GRANTED.

I.      **Factual and Procedural Background**[1]

---

[1]      Except as otherwise noted, the factual summary is based solely upon the undisputed facts
set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits
and other evidence filed with the Court as part of the Summary Judgment motion
briefing. Those facts which are contested and have some support through the submitted
affidavits or other evidence will be addressed in the body of the opinion, and shall be

Ms. Peterson began her employment with UHRH in January 2008 as a Patient Accounting Specialist II in Cleveland, Ohio. (ECF #31-1, deposition of Plaintiff, PageID #216 and 287 (hereafter, "Plaintiff Dep. at PageID #___").  In 2012, Ms. Peterson voluntarily transferred to the Bedford Medical Center, where she worked as a Scheduling Coordinator. (Plaintiff Dep. at PageID #219 and 233).

In May 2013, Ms. Peterson called UHRH's compliance hotline and reported that a coworker, Raylena Schaefer, had accessed Ms. Peterson's medical records in violation of the Health Insurance Portability and Accountability Act (HIPAA).[2] (Plaintiff Dep. at PageID #274-75). Following an investigation, UHRH found that Ms. Schaefer had accessed Ms. Peterson's records, and subsequently disciplined Ms. Schaefer, but did not terminate her.  (Plaintiff Dep. at PageID #275-76).

On May 28, 2014, Ms. Peterson tripped and fell while at work, causing injury to her right shoulder, lower back, and left knee. (Plaintiff Dep. at PageID #227-29).  Shortly thereafter,[3] Ms. Peterson filed a workers' compensation claim and UHRH placed her on medical leave under the Family and Medical Leave Act ("FMLA").[4] (Plaintiff Dep. at PageID #228-30).  After Ms.

---

construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

[2]  42 U.S.C. § 1320d-6. The parties dispute whether Ms. Peterson made written complaints about the HIPAA violation and to whom she complained. Additionally, the parties do not agree on any other complaints made by Ms. Peterson during the course of her employment.

[3]  Ms. Peterson has not provided this Court with the actual date of the Workers' Compensation filing.

[4]  29 U.S.C. §§ 2601 et seq. Between 2011and 2013, Ms. Peterson had at least three or four FMLA leaves approved by UHRH. (Plaintiff Dep. at PageID #55-56, 81).

Peterson's twelve weeks of FMLA leave, Ms. Peterson remained on leave for another seven months. (Plaintiff Dep. at PageID #230, 244, and 248).  Ms. Peterson was not released to return to work until March 10, 2015.  (ECF #31-1, p. 289).

During Ms. Peterson's leave of absence, UHRH eliminated the three Scheduling Coordinator positions at the Bedford Medical Center, which included Ms. Peterson's position. (Plaintiff Dep. at PageID #219-20 and 235).  Ms. Peterson testified that in September of 2014, UHRH employee Ms. Kamenos offered her an alternative scheduling position, but she declined because she was not yet released back to work and was searching for another position within the UHRH system. (Plaintiff Dep. at PageID #235-38; ECF #31-1, PageID #290).

Once Ms. Peterson was cleared to return to work in March 2015, UHRH provided her with an additional three months to secure an alternative position at UHRH, which is a standard policy for employees whose positions have been eliminated. (Plaintiff Dep. at PageID #225-26; ECF #31-1, PageID #289, Plaintiff Affidavit at Paragraph 26, PageID #322). UHRH sent Ms. Peterson a letter at this time notifying her that if she "did not secure a position during the 3-month period from March 10, 2015 to June 10, 2015, [she would] be taken off roll effective date as of June 10, 2015." (ECF #31-1, PageID #289).  During those three months, Ms. Peterson had access to UHRH's online job board and UHRH provided a recruiter to assist Ms. Peterson through the process. (Plaintiff Dep. at PageID #226-27).  Ms. Peterson testified that she applied and interviewed for numerous positions at UHRH during this time, but ultimately did not locate another position.  (Plaintiff Dep. at PageID #226 and 242-43).  Accordingly, UHRH effectively terminated Ms. Peterson and placed her off roll on June 10, 2015. (Plaintiff Dep. at PageID #217 and 225-26). UHRH told Ms. Peterson that despite being terminated, she remained eligible for

-3-

rehire and could still apply for open positions within the UHRH system. (Plaintiff Dep. at PageID #217).

Ms. Peterson admits that she does not "know who had anything to do with the June decision" to take her off roll. (Plaintiff Dep. at PageID #239). Ms. Peterson also admits that she is unaware of any other UHRH employee who was similarly situated, but treated differently than she. (Plaintiff Dep. at PageID #244-45 and 255-56). Additionally, Ms. Peterson testified that she was paid throughout her leave and her only issue during this time was not being able to locate a new position.[5] (Plaintiff Dep. at PageID #230 and 242).

Ms. Peterson filed a nine-count Complaint against Defendants on November 20, 2015.[6] This Court dismissed four counts on a Motion to Dismiss pursuant to Rule 12(b)(6), leaving the following claims at issue herein: workers' compensation retaliation; disability discrimination under Ohio Revised Code § 4112.01 *et seq.*; FMLA retaliation; violation of the Ohio Whistleblower Statute, Ohio Rev. Code § 4113.52; and, race discrimination under Ohio Rev. Code § 4112.02. (See ECF #1-1).  Defendants have moved for Summary Judgment, asserting there are no genuine issues of material fact and that they are entitled to judgment as a matter of law under Fed. R. Civ. Pro. 56. Ms. Peterson has opposed the motion and this matter is now fully briefed and ready for decision.

## II.    Standard of Review

---

[5]    Ms. Peterson admitted she had no problems with the professional individuals UHRH provided her during this process. (Plaintiff Dep. at PageID #75-76).

[6]    This Complaint was filed in the Cuyahoga County Court of Common Pleas, designated Case No. CV-15-854710, and was later removed to this Court on December 22, 2015, by motion of Defendants.

-4-

The summary judgment standard is well-settled. Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. (*Id.* at 322). A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Id.* at 248–49; *National Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based

on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251–52;

*Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or

denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256.  Instead, an opposing party

must affirmatively present competent evidence sufficient to establish a genuine issue of material

fact necessitating the trial of that issue. (*Id.*). Merely alleging that a factual dispute exists cannot

defeat a properly supported motion for summary judgment. (*Id.*). A genuine issue for trial is not

established by evidence that is "merely colorable," or by factual disputes that are irrelevant or

unnecessary. (*Id.* at 248–52).

### III. Analysis

### A. Statute of Limitations Issue

On November 22, 2007, Ms. Peterson reviewed and signed a four-page employment

application (hereafter "Application") with UHRH.  (Plaintiff Dep. at PageID #221-22; 282-86).

The Application stated:

> I agree that any claim or lawsuits relating to my service with University
> Hospitals Health Systems or any of its subsidiaries or affiliates must be
> filed no more than six (6) months after the date of the employment action
> that is the subject of the claim or lawsuit.  I waive any statute or limitations
> to the contrary.

UHRH argues that all of the events giving rise to Plaintiff's claims "occurred prior to

Plaintiff's leave in May of 2014," and that her claims are time-barred because this lawsuit was not

filed within six-months as stated in the Application. (ECF #31, PageID #211). Ms. Peterson argues

that the six-month time limitation may not be enforceable, but assuming the provision is valid, Ms.

-6-

Peterson filed her lawsuit within six-months of the employment action at issue herein - her termination on June 10, 2015. (ECF #32, PageID #318).[7]

It is well-established that in the absence of a controlling statute to the contrary, a provision within a contract may validly limit the time for bringing an action on such a contract to a period less than that which is set forth in the applicable statute of limitations, as long as the agreed-upon time period is reasonable. *See, e.g., Order of United Commercial Travelers of America v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947); *Terry v. Central Transport, Inc.,* 2011 WL 3296852 (N.D. Ohio, July 29, 2011)(citation omitted).  More specifically, the Sixth Circuit has found "nothing inherently unreasonable about a six-month limitations period." *Myers v. W. & S. Life Ins. Co.,* 849 F.2d 259, 262 (6th Cir. 1988).

However, it is unnecessary to conduct an analysis of whether the six-month limitation within the Agreement was valid herein.  Ms. Peterson specifically stated in her Memorandum in Opposition that "the employment action that is [the] subject of [her] claims is her being placed off-roll on June 10, 2015." (ECF #32, PageID #318).  That being the case, Ms. Peterson's claims are not time-barred, as she adhered to the Agreement when she filed this lawsuit within six-months of being terminated.

### B.    Workers' Compensation Retaliation - Ohio Rev. Code § 4123.90

Ms. Peterson filed a workers' compensation claim shortly after she fell at work on May 28, 2014.  It has already been established that Ms. Peterson did not return to work at any time before her position was eliminated by UHRH and she was taken off roll on June 10, 2015.

---

[7]    Ms. Peterson has not argued other adverse employment actions that constitute a "material adverse change in the terms or conditions" of her employment due to UHRH's conduct. *See Kocis v. Multi-Care Mgmt.,* 97 F.3d 876, 885 (6th Cir.1996)(citation omitted).

-7-

### 1.    Prima Facie Case

In order to establish a prima facie case for workers' compensation discharge, Ms. Peterson

must prove that she (1) was injured on the job, (2) filed a workers' compensation claim, and (3)

suffered an adverse employment action in violation of Ohio Rev. Code § 4123.90. *Siskie v. Old*

*Dominion Freight Line, Inc.,* 170 F.Supp.3d 1017, 1023 (N.D. Ohio March 21, 2016)(citation

omitted). It is not disputed that Ms. Peterson was injured at work on May 28, 2014 and that she

subsequently filed a workers' compensation claim. Therefore, the issue is whether Ms. Peterson

can show a causal connection between the filing of the claim and the termination. *See Gaskins v.*

*Rock-Tenn Corp.*, 982 F.Supp.2d 760, 769 (S.D. Ohio 2013).

A workers' compensation retaliatory discharge claim can be established either through

direct evidence of retaliation or circumstantial evidence that would support an inference of

retaliation. *See, e.g., Siskie,* 170 F.Supp.3d at 1024 (*quoting Kent v. Chester Labs, Inc.*, 144 Ohio

App.3d 587, 592, 761 N.E.2d 60 (2001). Ms. Peterson has not presented any direct evidence to

support her claim of workers' compensation retaliation. Ms. Peterson testified during a deposition

that she never received negative comments from a supervisor or manager at UHRH relating to her

leave periods. (Plaintiff Dep. at PageID #249). There is no evidence of emails or other

communications between Ms. Peterson and anyone at UHRH indicating that she was being

terminated due to the filing of a workers' compensation claim. In fact, Ms. Peterson testified that

she does not know who made the decision to terminate her employment. (Plaintiff Dep. at PageID

#227, 239-40). Therefore, Ms. Peterson has not set forth sufficient evidence to prove that her

termination was "directly precipitated by the filing of a workers' compensation claim." *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 493, 741 N.E.2d 618, 625 (8th Dist. 2000).

Absent any direct evidence of retaliation, Ms. Peterson must present sufficient circumstantial evidence to create an inference that the employment decision was retaliatory. *Siskie*, 170 F.Supp.3d at 1024.  The framework set forth by the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)*,* governs claims of retaliation based on circumstantial evidence. See also *Giles v. Univ. of Toledo*, 478 F.Supp.2d 942, 953 (N.D. Ohio 2007).  Therefore, if Ms. Peterson presents a prima facie case of workers' compensation retaliation, the burden shifts to UHRH to articulate a non-discriminatory reason for its actions. *Siskie*,170 F.Supp.3d at 1024. If UHRH satisfies its burden of asserting a legitimate, non-discriminatory reason for the discharge, the burden shifts back to Ms. Peterson to show that the termination was pretextual and the real reason for the termination was the filing of the workers' compensation claim. (*Id.*).

Ms. Peterson argues that "the proximity between" the workers' compensation filing and "her failure to be given a new position" is evidence of retaliation. (ECF #32, p. 11).  Ms. Peterson filed her workers' compensation claim "soon after" May 28, 2014, and she was taken off roll over one year later.  In some retaliation cases, "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for purposes of satisfying a prima facie case." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  But in cases where "some time" elapses between the events, "the employee must couple temporal

-9-

proximity with the other evidence of retaliatory conduct to establish causality."(*Id.*)(citation omitted).

In this case, the one-year time gap does not create an inference of a causal connection between Ms. Peterson's filing of a workers' compensation claim and her position being eliminated. *See, e.g., Nicholson v. City of Clarksville, Tenn.*, 530 Fed.Appx. 434 (6th Cir. 2013)(citing *Cooper*, 795 F.2d 1265, 1272 (6th Cir. 1986). In the Sixth Circuit, a period of more than four months was considered "too long to support an inference of causation" of workers' compensation retaliation. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 550 (6th Cir. 2008)(citing *Cooper*, 795 F.2d at 1272)("[t]he mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation")(remaining citations omitted). See also *Flagg v. Staples the Office Superstore East, Inc.*, 138 F.Supp.3d 908, 917 (N.D.Ohio Sept. 29, 2015)("temporal proximity of five months is insufficient to establish a causal connection in and of itself"); *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 718 (6th Cir. 2007)(finding no causal connection where gap between protected activity and adverse employment action was six months); *Cecil v. Louisville Water Co.*, 301 Fed.Appx. 490, 502 (6th Cir. 2008) (holding that adverse employment activities that occurred 10 months and 17 months after separate protected activities was insufficient, on its own, "to create a reasonable inference of causation"). Therefore, Ms. Peterson cannot rely on temporal proximity to infer that UHRH eliminated her position due to the filing of her workers' compensation claim.

The only other allegations made by Ms. Peterson to support her workers' compensation retaliation claim are "hostile attitudes" by other employees, including Defendant Kamenos, relating to Ms. Peterson's leaves. (*See* ECF #32, PageID # 316).  However, as previously

-10-

indicated, Ms. Peterson is unable to identify anyone at UHRH who spoke negatively toward her regarding the workers' compensation claim.  Nor can Ms. Peterson identify who at UHRH was involved with the decision to take her off roll in June 2015.  Specifically, Ms. Peterson testified that she does not know whether Defendant-Kamenos was involved in the June decision. (Plaintiff Dep. at PageID #239). Finally, Ms. Peterson testified that she does not believe that UHRH's decision to terminate her was based upon the filing of a workers' compensation claim. (Plaintiff Dep. at PageID #247-48).  Therefore, Ms. Peterson has not set forth circumstantial evidence to show that UHRH's decision to take her off roll was in retaliation for filing the workers' compensation claim.

  **2. McDonnell-Douglas Burden-Shifting Analysis**

   Even if Ms. Peterson was able to prove her prima facie case, UHRH had a legitimate, nondiscriminatory reason for terminating her.  UHRH eliminated all scheduling coordinator positions at the Bedford Call Center.  UHRH held Ms. Peterson's job open for her, but in September 2014, Ms. Peterson indicated she did not want the position held for her. (Plaintiff Dep. at PageID #235-38; 290). Ms. Peterson claims she utilized the resources made available to her by UHRH to look for another position and had no problems or issues with anyone at UHRH during this search. (Plaintiff Dep. at PageID #242-44).  On March 19, 2015, UHRH sent Ms. Peterson a letter pursuant to company policy that stated, "if you do not secure a position during the 3-month period from March 10, 2015 to June 10, 2015, you will be taken off roll effective date as of June 10, 2015." (Plaintiff Dep. at PageID #289).   Ms. Peterson was unable to find a new position during this period of time, and thus UHRH took her off roll. (Plaintiff Dep. at PageID #226-27).

Additionally, even if Ms. Peterson could prove her prima facie case, she makes no argument that UHRH's decision to terminate her was a pretext to discriminate against her. Ms. Peterson does not prove that UHRH's reason for terminating her (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Ms. Peterson admitted that she does not even "know who had anything to do with the June decision" to take her off roll. (Plaintiff Dep. at PageID #70). Without evidence to support the theory that discrimination was the basis for Ms. Peterson's termination, it cannot be argued that UHRH's decision was merely a pretext.

For these reasons, summary judgment is GRANTED for UHRH on Ms. Peterson's workers' compensation retaliation claim.

### C.      Disability Discrimination - Ohio Rev. Code § 4112.02

In order to recover for disability discrimination, Ms. Peterson must prove that: (1) she was disabled; (2) UHRH took adverse employment action against her, which was caused, at least in part, by her disability; and (3) despite the disability, Ms. Peterson could safely and substantially perform the essential functions of her job. Ohio Rev. Code § 4112.02. *See also Blosser v. AK Steel Corp.*, 520 Fed.Appx. 359 (6th Cir. 2013)(citation omitted).[8] The burden is upon Ms. Peterson to establish that UHRH discriminated against her due to an alleged disability when it eliminated her position on June 10, 2015. *See Maxwell v. GTE Wireless Serv. Corp.*, 121 F.Supp.2d 649 (N.D. Ohio 2000)(citation omitted).

---

[8]      Ohio Rev. Code § 4112.01(A)(13) defines a disability as "a physical or mental impairment that substantially limits one or more major life activities ... a record of [an impairment], or being regarded as having a physical or mental impairment."

-12-

Ms. Peterson's discriminatory discharge claim is subject to the same *McDonnell Douglas* burden-shifting analysis as her workers' compensation retaliation claim. *Kovac v. Superior Dairy, Inc.*, 998 F.Supp.2d 609, 623 (N.D. Ohio 2014). Ms. Peterson must also prove that UHRH knew of her disability, and that she was "replaced, the job remained open, or similarly situated, non-disabled employees were treated more favorably." *Garcia v. Whirlpool*, 2010 WL 4628627 (N.D. Ohio Nov. 5, 2010); *aff'd*, 468 F. App'x 609 (6th Cir. 2012) (citing *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000).

The parties do not dispute that Ms. Peterson was considered disabled while on medical leave, UHRH was aware of the disability, or that her position was eliminated while she was on leave. However, Ms. Peterson admitted during her deposition that she has no evidence to support the claim she was discharged from UHRH due to her disability. (Plaintiff Dep. at PageID #253-54). Furthermore, Ms. Peterson's disability discrimination claim ultimately fails because she has not established that UHRH replaced her, or treated similarly-situated, non-disabled employees more favorably. *See, e.g., Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007)(citation omitted). The mere fact that the other two Bedford Call Center schedulers were reassigned to new positions within UHRH is not enough to show that UHRH discriminated against Ms. Peterson. Ms. Peterson has not attempted to show that she was "similarly situated" to these other schedulers. Moreover, Ms. Peterson has not proffered evidence to show which positions she applied for, the extent of her qualifications for these positions, or any specific information relating to her job-search procedures.

In fact, Ms. Peterson does not know who made the decisions not to rehire her during this time, and does not know if anyone making these decisions at UHRH knew why she had been on medical leave. (Plaintiff Dep. at Page ID #243). More specifically, Ms. Peterson cannot identify

-13-

any UHRH employee that filed for a medical leave and claimed they were treated better than her. (Plaintiff Dep. at Page ID #78).  Without these facts, Ms. Peterson is relying on "self-serving innuendo and speculation," which does not survive summary judgment. *See Sperber v. Nicholson*, 342 Fed.Appx. 131, 132 (6ᵗʰ Cir. 2009)(failure to present similar evidence in age discrimination case does not present prima facie case).

For these reasons, Ms. Peterson has not set forth a prima facie case of disability discrimination herein.  Even if a prima facie case has been presented, UHRH has advanced legitimate, non-discriminatory reasons for terminating Ms. Peterson's employment, and Ms. Peterson has not raised a genuine issue of material fact to show that these reasons were merely pretext. *See, e.g., Blosser*, 520 Fed.Appx. at 367 (citation omitted).  Therefore, summary judgment is GRANTED for UHRH on Ms. Peterson's disability discrimination claim.

**D.    Family and Medical Leave Act ("FMLA") Retaliation - 29 U.S.C. § 2614(a)(1)**

Section 2614(a)(1) of the FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination or demotion, when the leave is taken for a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2614(a)(1)*; Seeger v. Cincinnati Bell Tele. Co.*, 681 F.3d 274, 283 (6ᵗʰ Cir. 2012)(citation omitted).

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful [by the FMLA]." 29 U.S.C. §2615(a)(2). To prove an FMLA retaliation claim, a plaintiff must establish (1) he was engaged in protected activity; (2) he suffered an adverse employment action; and (3) the protected

-14-

FMLA activity caused the adverse action. *See Blosser,* 520 Fed.Appx. at 359; *Flagg,* 138 F.Supp.3d at 917. The only issue herein is whether Ms. Peterson has established causation.

Ms. Peterson's argument regarding causation relies only upon circumstantial evidence, which the Sixth Circuit has found requires an analysis under the *McDonnell Douglas* burden-shifting framework in FMLA claims. *See, e.g., Seeger,* 681 F.3d at 283. Ms. Peterson argues that a causal connection exists based upon the belief that "[d]efendants scrutinized Peterson's FMLA leave when she took it." (ECF #32, PageID # 310). The facts and evidence in this case do not support this tenuous argument. First, Ms. Peterson testified that she has no evidence to support the claim that UHRH retaliated against her for taking the FMLA leave. (Plaintiff Dep. at PageID #249-50). Ms. Peterson further testified that she had taken several FMLA leaves in the past, none of which were ever denied. (Plaintiff Dep. at Page ID #230-31). Furthermore, Ms. Peterson testified that no UHRH employee ever suggested she was taking too many FMLA leaves. (Plaintiff Dep. at PageID #249). Rather, Ms. Peterson opined during her deposition that she "kind of figured that maybe they thought that I took many leaves at [UHRH]." (Plaintiff Dep. at PageID #249). Ms. Peterson's feelings or opinions as to why she was terminated are irrelevant - she must offer evidence that an adverse action was taken in retaliation for specific protected conduct. *See Gaskins,* 982 F.Supp.2d at 778.

Ms. Peterson has not set forth a prima facie case of FMLA retaliation.  Assuming *arguendo* that Ms. Peterson had proven a causal connection between taking FMLA leave and her termination, this opinion previously outlined that UHRH has set forth a legitimate, nondiscriminatory rationale for terminating Ms. Peterson. *See, e.g., Seeger,* 681 F.3d at 284

(citation omitted).  Therefore, summary judgment is GRANTED for UHRH on Ms. Peterson's

FMLA retaliation claim.

### E.     Violation of the Ohio Whistleblower Statute, Ohio Rev. Code § 4113.52

To prove retaliation under the Ohio Whistleblower statute, Ms. Peterson must establish

that: (1) she engaged in activity protected under the statute; (2) she was subject to an adverse

employment action; and (3) there is a causal link between the protected activity and the adverse

employment action.  Ohio Rev. Code § 4113.52; *Klepsky v. UPS*, 489 F.3d 264, 271 (6th Cir.

2007).  There is no dispute that Ms. Peterson's termination was as an adverse employment action.

The question is whether Ms. Peterson's activity was protected under the statute and, if so, whether

her termination was connected to those protected activities.

### 1.     Protection under Ohio Rev. Code § 4113.52(A)(1)(a)

Ohio Rev. Code § 4113.52(A)(1)(a) applies when, in the course of her employment, an

employee becomes aware of a violation which the employee reasonably believes is either a felony

or a criminal offense likely to cause imminent risk of physical harm or a hazard to public health or

safety. *Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 652 N.E.2d 940, 943 (Ohio 1995).  If those

criteria are met, the employee:

> orally shall notify the employee's supervisor . . . of the violation and subsequently
> shall file with that supervisor or officer a written report that provides sufficient
> detail to identify and describe the violation. If the employer does not correct the
> violation or make a reasonable and good faith effort to correct the violation within
> twenty-four hours after the oral notification or the receipt of the report, whichever
> is earlier, the employee may file a written report . . . [with] any other appropriate
> public official or agency that has regulatory authority over the employer.

-16-

Ohio Rev. Code § 4113.52(A)(1)(a).  An employee is protected by the statute only if they have strictly complied with the above requirements.  *See Contreras*, 652 N.E. 2d at syllabus.

Ms. Peterson did not comply with the requirements of Ohio Rev. Code Section 4113.52(A)(1)(a) and is therefore not entitled to protection under this provision of the Whistleblower's Statute.  Ms. Peterson suggests that her HIPAA complaint in 2013 was activity protected under the act.[9]  (ECF #32, PageID #313-14).  Regardless of whether Ms. Peterson's belief that the access of her medical records constituted a criminal offense was reasonable, she failed to comply with the procedures required by Ohio Rev. Code § 4113.52, and thus, her claim fails.

Ms. Peterson states that she complained to UH's compliance hotline in May of 2013 and "made written reports when she wrote a letter to the Department of Health and Human Services, Office for Civil Rights on August 6, 2013 . . . [she] followed up on these written reports and ensured that her supervisors and management were aware of the written charges." (ECF #32, PageID #313-14).  Ms. Peterson does not claim that she notified her supervisor orally, nor does she provide evidence that she submitted a written complaint to the same supervisor.  Instead, she admits she submitted a written report to an outside agency and then later informed her supervisors.  However, "R.C. 4113.52(A)(1)(a) requires the employee to file the report *before* notifying outside authorities." *Lee v. Village of*

---

[9]  Ms. Peterson also suggests that a HIPAA complaint she made in 2014 might fall under the act. (ECF #32, PageID #313).  However, Ms. Peterson does not allege that she made a written report relating to the alleged violation in 2014, and therefore, that complaint fails to comply with the procedural requirements of Ohio Rev. Code § 4113.52(A)(1)(a) and does not entitle Ms. Peterson to whistleblower protection.

*Cardington*, 142 Ohio St.3d 488, 492 (2014) (emphasis in original).  Therefore, Ms.

Peterson is not entitled to protection under the Whistleblower's Statute for the HIPAA

complaints she made in either 2013 or 2014, because she failed to comply with the

procedural requirements of the statute.

### 2. Causal Link between Protected Activity and Adverse Employment Action

Even if Ms. Peterson's activity had been protected under the Whistleblower's Act,

she has offered no evidence to suggest a causal link between her alleged protected activities

and her termination in June 2015.  As this opinion has already outlined, a gap of more than

one year between the protected activity and an employee's termination is too remote to

establish a causal connection as a matter of law.  *See, e.g., Cooper*, 795 F.2d at 1272

("[T]he mere fact that Cooper was discharged four months after filing a discrimination

claim is insufficient to support an inference of retaliation"); *Fuhr v. Hazel Park Sch. Dist.*,

710 F.3d 668, 676 (6th Cir. 2013) (finding a gap of two years insufficient because "[o]ur

review of the law shows that multi-year gaps between the protected conduct and the first

retaliatory act have been insufficient to establish the requisite causal connection").

Here, there was a gap of more than two years between Ms. Peterson's HIPAA

complaint in May of 2013 and her termination on June 10, 2015, and a gap of more than

one year between her alleged complaint on April 30, 2014, and her termination.  These

gaps are too long to support a causal connection between Ms. Peterson's complaints and

her termination.  Ms. Peterson has not provided any additional evidence to support a causal

connection between her protected activities and her termination.

-18-

Ms. Peterson has not set forth a prima facie case of Whistleblower retaliation. Even if Ms. Peterson had proven a causal connection between protected activity under Ohio Rev. Code § 4113.52(A)(1)(a) and her termination, this opinion previously outlined that UHRH has set forth a legitimate, nondiscriminatory rationale for terminating Ms. Peterson. *See, e.g., Klepsky*, 489 F.3d at 272. Ms. Peterson has not offered any evidence to show UHRH's reasons were mere pretext. Therefore, summary judgment is GRANTED for UHRH on Ms. Peterson's Whistleblower retaliation claim.

**F.      Race Discrimination Claim - Ohio Rev. Code § 4112.02**

Ms. Peterson alleges that UHRH discriminated against her because of her race in violation of Ohio Rev. Code § 4112.02(A) when she was terminated and placed off roll. Because Ms. Peterson has not presented direct evidence of discrimination in this case, the Court will determine if Ms. Peterson has established discrimination through circumstantial evidence. As with Ms. Peterson's other claims herein, circumstantial evidence can raise an inference of racial discrimination by applying the burden shifting framework laid out in the *McDonnell-Douglas* case.

To satisfy a race discrimination claim, Ms. Peterson must prove that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for her position; and (4) was replaced by a person from outside her protected class, or was treated differently than similarly-situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).   If Ms. Peterson establishes a prima facie case of discrimination, the burden of production shifts to UHRH to articulate a legitimate, non-

-19-

Case: 1:15-cv-02670-DCN Doc #: 39 Filed: 03/07/17 20 of 23. PageID #: 464

discriminatory reason for the employment decisions at issue. *McDonnell Douglas*, 411 U.S. at 804.

If UHRH meets this burden of production, Ms. Peterson must then prove UHRH's reason for terminating her was a pretext for race discrimination. "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996)(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).[10]

### 1. Prima Facie Case

Ms. Peterson cannot establish a prima facie case of discrimination because she fails to fulfill the fourth prong of the test - showing that she was treated differently than similarly-situated, non-protected employees. UHRH does not dispute that Ms. Peterson belongs to a protected class (African-American), that she was qualified for her position as scheduling coordinator, or that being terminated is an adverse employment action. Ms. Peterson also does not argue that she was replaced by anyone, as her position was eliminated. The only dispute is whether UHRH treated Ms. Peterson less favorably than a similarly situated employee not in a protected class.

To fulfill the fourth prong of a prima facie case, the plaintiff must show that he or she is similar to the other employee in all relevant aspects. *Giles*, 478 F.Supp.2d at 954 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Differences in

---

[10] A plaintiff can establish pretext by showing the defendant's reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision. *Giles*, 478 F.Supp.2d at 953 (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

-20-

experience and work record can be used to determine whether two employees are similarly

situated. *Leadbetter v. Giley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce v.

Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir. 1994).  Furthermore, in order to fulfill

the fourth prong of the prima facie case, the plaintiff must establish that she and the non-

protected person who ultimately was hired for the desired position had similar

qualifications.  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005)

(female plaintiff claiming sex discrimination when a male was hired for a position for

which they both applied failed to meet her prima facie burden where the two were not

similarly situated because the plaintiff was not as qualified as the male).

Ms. Peterson alleges that UHRH treated her Caucasian coworker, Kimberly

Morley, more favorably because Ms. Morley received a position for which she had

applied.[11]  Ms. Peterson fails to prove that she was similarly situated to Ms. Morley. (See

ECF #32, PageID #312-13). The only similarities Ms. Peterson can rely upon are that they

were both scheduling coordinators who had their jobs eliminated, they both declined an

initial offer of another position, and they both applied for other positions within UHRH.

(See Kamenos Dep. at PageID #339).  Ms. Peterson neglected to show that they applied to

the same jobs during the same time period, that they applied to the same amount of jobs,

that the hiring decisions were made by the same person, or that they were equally qualified

for the jobs.  Therefore, Ms. Morley may have received a job that Ms. Peterson did not

---

[11]  A third, part-time scheduling coordinator, Aramis, also had his position eliminated, but
his race, training and qualifications have not been discussed during the briefing of this
case.  See ECF #33-1, Page ID #336.

even apply for or that she received a job offer because she was more qualified than Ms. Peterson.

Without showing that they had similar qualifications, Ms. Peterson fails to prove that she is similarly situated to Ms. Morley in all relevant aspects. Ms. Peterson additionally admitted in her deposition that she is unaware of any other UHRH employee who was similarly situated but treated differently from her. (Plaintiff Dep. at PageID #244-45, 255-56). Therefore, Ms. Peterson fails to prove the fourth prong of her prima facie case because she does not prove that she was similarly situated to Ms. Morley.

### 2.  McDonnell-Douglas Burden-Shifting Analysis

Even if Ms. Peterson was able to prove her prima facie case, it has previously been discussed that UHRH had a legitimate, nondiscriminatory reason for terminating her. Ms. Peterson has not proven that UHRH terminated her because of her race; rather, Ms. Peterson was unable to find another position within UHRH. Additionally, even if Ms. Peterson could prove her prima facie case, she makes no argument that UHRH's decision was a pretext to discriminate against her based on her race. Ms. Peterson admitted that she does not even "know who had anything to do with the June decision" to take her off roll. (Plaintiff Dep. at PageID #70). Ms. Peterson's conclusory assertions are not sufficient to show that UHRH's reason for terminating her was a pretext for racial discrimination. *See, e.g., McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). Therefore, Ms. Peterson fails to prove that UHRH racially discriminated against her in violation of Ohio Rev. Code § 4112.02.

-22-

As there is no genuine issue of material fact regarding Ms. Peterson's race discrimination claim, summary judgment is GRANTED for UHRH on Ms. Peterson's racial discrimination claim.

### F.    Conclusion

For the reasons set forth herein, Defendants' Motion for Summary Judgment (ECF #31) is GRANTED as to all Defendants and on all Counts of Plaintiff's Complaint.

IT IS SO ORDERED.

/s/ Donald C. Nugent

DONALD C. NUGENT
United States District Judge

DATED: March 6, 2017